## RAILWAYS CORPORATION v. RAY CONSOL. COPPER CO.

Circuit Court of Appeals, First Circuit. April 6, 1928.

No. 2153.

1. **Principal and agent ⟨⇒23(5)—Evidence supported finding that company transmitting communications between plaintiff and defendant regarding renting plaintiff's air dump cars was not plaintiff's agent.**

In action to recover rent of air dump cars, less payments made, evidence held, to support court's finding that company carrying on communications between plaintiff and defendant regarding renting cars was not agent of plaintiff in negotiations leading up to and at time of execution of lease but that it was an intermediary through whom written communications from one party to another were transmitted.

2. **Contracts ⟨⇒93(4)—Equity will not cancel contract at instance of one not defrauded, whose claimed misunderstanding of terms is due to his own inattention.**

Equity will not cancel contract at instance of one as to whom no fraud or deception was practiced, and whose claimed misunderstanding of terms, providing for lease of air dump cars for minimum period of three months, with option of additional twelve months' lease, was due to his own inattention or want of reasonable care.

Appeal from the District Court of the United States for the District of Maine; John A. Peters, Judge.

Action by the Railways Corporation against the Ray Consolidated Copper Company. From the decree, plaintiff appeals. Decree vacated, and case remanded.

Edward F. McClennen, of Boston, Mass. (Arthur E. Whittemore, of Boston, Mass., and Leonard A. Pierce, of Portland, Me., on the brief), for appellant.

Leon V. Walker and Charles D. Booth, both of Portland, Me. (Robert Hale, Robinson Verrill, and Verrill, Hale, Booth & Ives, all of Portland, Me., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and LOWELL, District Judge.

BINGHAM, Circuit Judge. This is an action at law, brought by the Railways Corporation, an Illinois corporation with its principal place of business in Chicago, against the Ray Consolidated Copper Company, a Maine corporation, to recover twelve months' rent of ten air dump cars, less payments made and sums received from the leasing of the cars by the plaintiff for the defendant's account after they were returned and during the remainder of the lease. The defendant filed a plea of the general issue, with a brief statement setting up as a special defense that on March 14, 1924, the defendant entered into an agreement with the plaintiff for the rental of the cars, "agreeing to pay as rental therefor the sum of $150 per month per car for a minimum period of three months, with the option * * * of renting said cars at the same rate for any number of additional months, not to exceed twelve additional months"; that it returned six of the cars June 27, 1924, paying the rental therefor up to July 14, 1924, and returned the remaining four cars August 1, 1924, paying rental therefor up to August 14, 1924.

And as an equitable defense it pleaded that during the months of February and the early part of March, 1924, it entered into negotiations with the plaintiff for the rental of the ten cars; that it was well understood between the parties "that the defendant desired these cars for a period of three months, with an option of renting them from month to month for such further time it might desire"; that "on or about March 14, 1924, the defendant entered into an oral agreement for the rental of said ten cars, the defendant agreeing to take them for the minimum period of three months, with the option of renting them for such additional months as it might desire, not to exceed twelve"; that, at the time said oral agreement was entered into,

Harold Grey, a member of the Grey Steel Products Company of New York City, as plaintiff's duly authorized agent, presented the lease in question, which was executed by the defendant and later by the plaintiff, and it was understood by the defendant and Grey "to represent the terms of the oral agreement, but, by accident and mutual mistake on the part of the defendant and said Grey, the plaintiff's agent, said agreement * * * contained the sentence, 'such rent and hiring shall be in respect to each of said cars from the time said respective cars shall be shipped to the lessee for a minimum period of three (3) months, with option of twelve (12) months' lease,' although it was intended by both the defendant and the plaintiff that the said lease agreement should provide in accordance with said oral agreement, for a renting for a minimum period of three months, with option of any number of additional months not to exceed twelve additional months"; that from March 14, 1924, to June 14, 1924, "the minimum period referred to in said contract, and until after said last-named date, the defendant, without fault or negligence on its part, remained ignorant of the said mistake in said lease agreement."

The prayer was that the lease agreement be reformed "to meet the true effect and intention of the parties and their oral agreement, by striking out' * * * the words, 'with option of additional twelve (12) months' lease,' and inserting in place thereof the words, 'with option of any number of additional months, not to exceed twelve (12) additional months,'" and in the alternative for cancellation.

The plaintiff, in its answer to the equitable plea or bill, denied that the Grey Steel Products Company represented the plaintiff or was authorized to negotiate on its behalf; denied that it was well understood between it and the defendant that the latter desired the cars for a period of three months, with an option of renting them from month to month for such further time as it might desire; denied that any oral agreement was ever made as to the rental of the cars; and alleged that the only agreement made was the written contract dated March 14, 1924; alleged that Grey as an intermediary between the parties presented the written agreement to the defendant; denied that there was any mistake or accident in preparation or execution of the written contract; denied that the order (Exhibit 1) constituted a part of the agreement between the parties and that it ever believed that the order varied or altered the written

agreement; denied that it ever understood and had reason to understand that the lease gave the defendant the right to rent the cars for a minimum period of three months, with the privilege of renting them for such additional months it might desire; denied that there was any mistake, mutual or otherwise, in the lease; and alleged that the defendant was fully informed of the lease, which it executed, etc.

In the District Court, the case was transferred to the equity docket and treated the same as though the defendant had filed a bill in equity seeking the relief asked in its plea. Judicial Code, § 274b (Comp. Stat. § 1251b [28 USCA § 398]). It was found that "the lease as drawn * * * [did] not truly represent the contract between the parties"; that the defendant signed the contract under a mistake, in that it did not understand that the words, "with option of additional twelve months' lease," meant, as claimed by the plaintiff, that, if the cars were kept and used beyond the three months' period, the twelve months' option would be exercised and the lease extended for that period of time; and (2) that the plaintiff, through its president, Nelson, on the receipt of Grey's letter of March 14, 1924, and the defendant's formal order of that date containing the words, "for a minimum period of three months, with option of twelve additional months," had noticed that the defendant's idea of the meaning of the clause in question might be radically different; that, knowing this, the plaintiff performed less than its duty, when an inquiry would have cleared up the mistake and relieved the defendant of the burden of the twelve additional months' lease. It is to be noted that the court did not find that there was a mutual mistake or that Grey was the plaintiff's agent, or that there was a previous oral contract, or that plaintiff was guilty of fraud. Having reached the above conclusion, it held that the lease should be canceled as, on the facts, the effect upon the rights of the parties would be the same whether canceled or reformed, and entered a decree accordingly. It is from this decree that the present appeal is taken.

The errors assigned are that the court erred in making and entering the decree that it did, in not finding that the lease agreement executed by the parties was valid and binding between them, and in the admission of certain evidence. It appeared:

That the Railways Corporation owned the cars in question and advertised them for rent; that the Grey Company, which had no previ-

ous relations with either the plaintiff or the defendant, seeing the advertisement, on November 9, 1923, wrote the plaintiff asking for its rental price on the 20 cars mentioned in the advertisement and its lowest cash price, if they were for sale; that the plaintiff replied that the cars were for rent for $150 per month, per car, not for sale; that February 19, 1924, the Grey Company wrote the plaintiff that they had a customer in the market for five cars, and requesting sale price on five or six of the cars; that the plaintiff again replied on February 21, 1924, that the cars were not for sale, but were available for rental at $150 each per month, that it had 15 cars available for rental; that on February 25, 1924, the Grey Company wrote that they had received an inquiry from the Chino Copper Company and had offered them the cars at $150 per month for a minimum period of three months, and on the same day wrote the Chino Copper Company making the offer; that on February 28, 1924, the Grey Company telegraphed the plaintiff that their "customer offers $100 per month for five months on your ten cars"; that on the same day the plaintiff telegraphed it could not make price lower than $150 per month; that on March 7, 1924, the Grey Company telegraphed the plaintiff asking for an inspection option and saying, if the cars passed inspection, that the Chino Copper Company would want ten cars for "a minimum period of three months, with privilege of leasing longer," and on the same day wrote the plaintiff to the same effect, confirming telegram.

That on March 8, 1924, the plaintiff telegraphed the Grey Company giving an inspection option, good until March 13th, and offering the cars "for minimum period of three months, with or without option for additional twelve months' lease"; that on the same day the Grey Company telegraphed the plaintiff acknowledging the receipt of the plaintiff's wire of even date, saying that they had been talking with their customer that day and that Hunt & Co. were to inspect the cars; that on March 10, 1924, the plaintiff wrote the Grey Company inclosing copy of telegram of March 8th, giving inspection option until March 13th, and three copies of a lease filled in, except as to date, car numbers, and name of the Grey Company's customer; that March 13, 1924, Thursday, the Grey Company telegraphed plaintiff "Expect to have lease signed Friday morning, please hold cars"; that Friday forenoon, March 14, 1924, the Grey Company telegraphed the plaintiff that it was mailing it that day "signed lease for

ten cars," and on the same day wrote the plaintiff inclosing two copies of lease executed by their customer, the Ray Consolidated Copper Company, Chino Mine, together with that company's original formal order for the ten cars inspected by Hunt & Co., stating that they had rented them to the Ray Consolidated Copper Company "for a minimum period of three months, with option for twelve additional months" and requesting that the cars be shipped as soon as possible to that company at the Chino Mine, Santa Rita, N. M., stating the railroad, and requesting the plaintiff to execute and return one of the inclosed signed leases for themselves and two additional copies for their customer; that the Ray Company's original formal order (Exhibit 1), inclosed in the Grey Company's letter, requested plaintiff to ship to "Ray Consolidated Copper Company, Chino Mine, Santa Rita, N. M., via A., T. & S. F. R. R." the ten cars, rental $150 per car per month, "which were inspected by R. W. Hunt & Co. for us, for a minimum period of three months with an option for twelve additional months, the above all in accordance with attached lease, dated March 14, 1924"; that on March 17, 1924, the plaintiff wrote the Grey Company, inclosing a letter addressed to Ray Consolidated Copper Company, and the original bill of lading covering shipment of the cars, and returned four copies of the signed lease covering the ten cars; that the inclosed letter stated, "Inclosed herewith please find four signed copies of lease agreement covering ten * * * cars shipped to Chino Mine, Santa Rita, N. M., on Saturday, March 15, per your order No. 9370 of March 14, 1924." The ten cars were shipped on March 15, 1924, after receipt of the telegram notifying plaintiff of the defendant's execution of the lease. The lease was on a printed form. Two copies were signed by the defendant, per Rowe McCune, its assistant general purchasing agent. The blank spaces for date of lease and for name of lessee were filled in by McCune in his handwriting. The blank spaces for describing the cars, their numbers, the period of the lease, the amount of rental, and the agreed value of a car in case of its destruction were filled in in typewriting. In the space provided for the insertion of the period of the lease was typewritten the words, "three (3) months, with option of additional twelve (12) months' lease"; so that the completed clause read, "Such renting and hiring shall be in respect to each of said cars from the time said respective cars shall be shipped to the lessee for minimum period of three (3) months, with option of additional twelve (12) months' lease."

[1] We think the court below was right in declining to find that the Grey Company was the agent of the plaintiff in the negotiations leading up to and at the time of the execution of the lease; that the Grey Company in doing what it did was an intermediary through whom the written communications from one party to the other were transmitted; that the defendant had no right to understand that the Grey Company was acting as the agent of the plaintiff; and that McCune, who represented the defendant throughout the transaction, did not so understand, for his testimony shows that he regarded the Grey Company to be acting as a broker, and that brokers handle such matters for a variety of people and not as an agent. Furthermore, the evidence shows that the negotiations leading up to the execution of the lease were all in writing; that on March 7, 1924, the Grey Company telegraphed the plaintiff, suggesting a lease of ten cars for a minimum period of three months, with the privilege or option of leasing longer; and that on March 8th the plaintiff replied, offering a lease for the minimum period of three months, with or without option of additional twelve months' lease. This offer is the first one the plaintiff made containing an option for an additional period over the minimum period; its prior offers having been for a minimum period only. The copies of the lease, which the plaintiff, on the 10th of March, forwarded for signature and which the defendant on the 14th of March signed, contained the clause providing for a minimum period of three months, with option for additional twelve months' lease, the same option proposed in its offer of March 8th. As the plaintiff never in any of its offers proposed an option other than the one finally embodied in the lease, there clearly is no evidence from which it can be found that the parties at any time, either orally or in writing agreed upon an option, in addition to the minimum period, differing in any respect from the one contained in the lease signed by the parties. In this situation no question of reformation is presented, for, if the lease does not define the contract which the parties made, no oral or written contract was made by which the lease can be reformed.

The language of the clause of the lease in question is plain. It tells the reader that it gives but a single option and that for a period of twelve months. McCune testified that he read it before he signed the lease, and, if he did and gave it any consideration, he must have known that it gave but a single

option and that for a period of twelve months. He also must have known, if he thought at all, that the minimum term for which the defendant was contracting was three months, and that, if the defendant did not exercise the option, the term of the lease would expire on the expiration of the three months; also that, if it exercised the option, the term of the lease would not expire until twelve months after the expiration of the three months' period. He also must have known that, if the defendant ceased to use the cars at the expiration of the three months and then returned them, it would not exercise the option; and it is difficult to see how he could have understood that the defendant would not have exercised the option if it retained the cars and used them after the expiration of the three months' period. If, on giving consideration to the matter, he had any doubt about the question, reasonable inquiry on his part would have removed the doubt. The evidence does not disclose that he or the defendant took any action to inform themselves as to this, either before signing the lease or at any time before the expiration of the three months' period. All the competent evidence discloses that the minds of the parties met and a contract was consummated when the defendant signed the lease. There was no evidence warranting a finding that the defendant was induced to sign the lease through the fraud or deception of the plaintiff, and no such claim is set up in its plea or bill. The plaintiff's offer, of a lease for a minimum period of three months, with option of additional twelve months' lease, contained in its telegram of March 8, 1924, and later embodied in the written contract, was open and above board, and called upon the defendant to accept or reject it, as it saw fit. It was the only offer containing an option that it made and the only one the defendant did or could have accepted. The defendant has argued that what was stated in the original formal order of the defendant and in the letter of the Grey Company, which were sent to the plaintiff on March 14, 1924, was notice to the plaintiff that the defendant did not understand the language of the option to mean the same as the plaintiff did, and prevailed upon the court below to take that view and to hold that the plaintiff was remiss in its duty in not making inquiry of the defendant, but we are unable to so view the situation. It is evident that the defendant understood the language of its formal order reciting the terms of the lease to be in substance those terms, for it accompanied its recital with the words, "The above all in accordance with at-

tached lease, dated March 14, 1924." Furthermore, we fail to see wherein the language used in the defendant's order in any way differed in meaning from that used in the clause in question in the contract. It gave a single option for twelve months, upon the expiration of the minimum period of three months. This was not notice to the plaintiff that the defendant was mistaken and misled as to the meaning of the option, but the contrary.

[2] Equity will not cancel a contract at the instance of one as to whom no fraud or deception has been practiced and whose claimed misunderstanding of its terms is due to his own inattention or want of reasonable care.

The decree of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.